IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARCUS BULLOCK,
  Petitioner,

vs.         Case No.:  3:16cv268/MCR/MJF

FLORIDA DEPARTMENT OF CORRECTIONS
SECRETARY,
  Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 4). Respondent filed an answer and relevant portions of the state court record (ECF No. 11). Petitioner filed a reply (ECF No. 12).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 11).[1] Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2013-CF-1028, with one count of burglary of an unoccupied dwelling (Count 1), one count of grand theft ($300 or more but less than $5,000) (Count 2), and one count of misdemeanor criminal mischief (Count 3) (Ex. A at 3). According to the arrest report, Mr. Charles Thomas reported that his home was burglarized between January 15–17, 2013 (*id.* at 5).  Mr. Thomas reported that the window of his back door was pried open and the screen cut (*id.*).  Thomas reported that items were stolen during the burglary (*id.*).  Officers processed the crime scene and determined that a fingerprint recovered from the front of a decorative candle holder package matched Petitioner's (*id.*).

On August 29, 2013, the trial court held a pre-trial hearing on the State's motion to introduce similar fact evidence of other crimes, wrongs, or acts (otherwise known as *Williams* Rule evidence) at trial (Ex. A at 17–19, 35–75). The State sought to

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 11).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

introduce the following evidence: (1) approximately one week after the burglary of Charles Thomas's residence, a second burglary occurred at Mr. Thomas's residence; (2) Mr. Thomas found unfamiliar clothing inside his residence after the second burglary, and DNA samples collected from the clothing matched Petitioner's DNA profile; and (3) during the second burglary, purses, liquor, and clothing were taken, which were the same types of items taken during the first burglary (the burglary with which Petitioner was charged) (*id.* at 17–19). Specifically with respect to DNA evidence, a report from a crime laboratory analyst with the Florida Department of Law Enforcement ("FDLE") stated the following with respect to testing of an item of clothing (a jacket) left in Mr. Thomas's home after the second burglary:

> The DNA profile obtained from Exhibit 6 (jacket) demonstrated the presence of a mixture. Assuming three donors to the mixture, a partial DNA profile for the major contributor could be determined. Due to the limited nature of the DNA results obtained from Exhibit 6 (jacket) for the minor contributors to the mixture, this data is insufficient for inclusion purposes but may be suitable for exclusion. This partial major DNA profile matches the DNA profile from Marcus D. Bullock (Exhibit 7).

> For 11 loci, the frequency of occurrence of the DNA profile obtained from Exhibit 6 (jacket) for unrelated individuals is approximately 1 in 4.1 trillion (4,100,000,000,000).

(Ex. A at 22–23). At the conclusion of the *Williams* Rule hearing, the court ruled that the evidence was admissible (*id.* at 64). The court set jury selection for the following

week (the defense had filed a notice of expiration of speedy trial) (*id.* at 36–37, 80). The prosecutor announced he had made the following plea offer to the defense, but the offer would expire soon:  if Petitioner pleaded guilty, the State would agree to a sentence of 15 years plus one day in prison on the first burglary and would agree not to prosecute the second burglary (*id.* at 64). The court inquired as to the maximum sentence Petitioner faced on the existing charges (*id.* at 63–64). The prosecutor announced that Petitioner qualified for enhanced sentences as both a Prison Releasee Reoffender ("PRR") and a Habitual Felony Offender ("HFO") (*id.*).  The court opined that Petitioner's sentences on the two felonies could be doubled, so he could be sentenced to 30 years on Count 1 (a second degree felony) and 10 years on Count 2 (a third degree felony), for a total sentence of 40 years (*id.*).  The prosecutor agreed (*id.*).  The court recessed for Petitioner to consider the plea offer and determine whether he still wished to proceed to trial (*id.* at 64–65).

When the proceedings recommenced, the defense asked for more time to consider the State's plea offer (Ex. A at 65).  The State had informed the defense that the offer expired that day (August 29, 2013), and Petitioner requested an additional five days (until jury selection the following Tuesday) to consider it (*id.* at 65–66). The following discussion ensued regarding Petitioner's potential sentence:

THE COURT: The problem you've got, though, is, I don't control the State and if the State charges you as an HFO, am I required to—I mean, am I required to charge—to double it, I can't remember. I mean, is that a man—minimum mandatory?

MR. BOUK [the prosecutor]: It's—on the HFO, it's not; on PRR, it's day for day, so it's 15 years.

The State's offer was HFO, which case law, I guess, says, is you have to do an extra day for the HFO component, so it's 15 years plus a day.

THE COURT: But he'd get gain time?

MR. BOUK: Not really, because the PRR would still be the 15 years—

THE COURT: He'd still be—

MR. BOUK: —day for day. However, he is eligible, as you said earlier, for 40 years on this case.

THE COURT: Okay.

MR. BOUK: And the State has agreed that—and I made the Defense aware awhile back that if the defendant were to plead today, the State would take no action on his second burglary that is yet uncharged. So it's a possibility that the defendant—

THE COURT: He gets more.

MR. BOUK: —could get up to 80 years, potentially.

. . . .

THE COURT: Here, Mr. Bullock, it is what it is. You're 36 and you're old enough to know right and wrong and make a decision. I'm not going to tell you what I'm going to do if they come to trial that day, I may make you got [sic] to trial.

. . . .

THE COURT: You—I mean, you got to make a decision, you know. And I'm not going to tell you, I might let you plead that day, it depends on what my schedule is and a lot of it is how many trials I've got set. And the State may say, Judge, we've got three witnesses, let's just try it, this guy is a danger to the community and we're going to ask for 40 years. And you're 36 and 36 plus 40 is—

THE DEFENDANT: Seventy-six.

THE COURT: And if it's PRR, you're going to do day for day, right; so, that's 76, you going [sic] to live that long, we got great medical care, you may. But here's the thing, you'll live in jail that long and then you'll come out at 76. I can't tell you what's going to happen. You've got to make a decision, you're here because of you. And they've got your DNA, one in four trillion. It doesn't take a rocket scientist to figure that one out, does it?

Why don't you have a sit and just think about it.

(Ex. A at 66–68). The court held proceedings in another case, and then returned to

Petitioner's case (*id.* at 69). Defense counsel announced that Petitioner and the State

entered a plea agreement, pursuant to which the parties agreed that Petitioner would

plead nolo contendere as charged, and he would be sentenced as an HFO to 15 years

plus one day and as a PRR to a 15-year mandatory minimum on the burglary count,

which would run concurrently (*id.* at 70).

The parties submitted a written plea agreement to the court (Ex. A at 81–85).

The written plea agreement set forth each charge and the maximum sentence, as well

as any mandatory sentence, each charge carried (*id.*). Specifically, the plea agreement

stated that the burglary charge (Count 1) was subject to PRR and HFO, carried a

maximum sentence of 30 years in state prison, and required a mandatory term of 15

years in state prison (*id.* at 81). The agreement stated that the grand theft charge

(Count 2) was subject to HFO, carried a maximum sentence of 10 years in state

prison, and did not require a mandatory term (*id.*). The agreement stated that the

criminal mischief charge (Count 3) carried a maximum sentence of 60 days in the

county jail (*id.*). Pursuant to the plea agreement, Petitioner agreed that the arrest report

set forth the facts underlying his plea (*id.*). The agreement included the following

terms:

> COUNT 1: A/G; 15 YEARS STATE PRISON PLUS ONE DAY AS A
> HABITUAL FELONY OFFENDER (HFO) TO BE SERVED
> CONCURRENT WITH 15 YEARS STATE PRISON AS A PRISON
> RELEASEE REOFFENDER (PRR); $518 COURT COSTS.

> COUNT 2: A/G; 5 YEARS STATE PRISON CONCURRENT WITH
> COUNT l.

> COUNT 3: A/G; TIME SERVED.

(Ex. A at 81). The plea agreement stated that the State and the defense were unaware

of any physical evidence for which DNA testing may exonerate Petitioner (*id.*). By

signing the plea agreement, Petitioner certified that he read and understood the

contents of the plea agreement (*id.* at 82–83). Petitioner also certified that he

understood the maximum period of imprisonment, as well as any mandatory minimum

sentence that applied, with regard to the charges to which he entering the plea as

indicated in the plea agreement (*id.* at 82).

The court conducted a colloquy, which included the following:

> THE COURT: Entering a plea of no contest in Case l3-CF-1028, Count 1, burglary of an unoccupied dwelling; grant [sic] theft is Count 2; and criminal mischief is the 3rd Count, is what you're doing?

> THE DEFENDANT:  Yes, Your Honor.

> THE COURT:  You're entering a plea of no contest because you're, in fact, guilty or it's in your best interest?·

> THE DEFENDANT:  Yes, Your Honor.

> THE COURT:  There's a plea agreement in the case, did you read and understand and agree with this?

> THE DEFENDANT:  Yes, Your Honor.

> THE COURT:  And did you sign it?

> THE DEFENDANT:  Yes, Your Honor.

. . . .

> THE COURT:  No exculpatory DNA?

> MS. REECE [defense counsel]: Not that we're aware of.

> THE COURT:  There's inculpatory DNA?

> MS. REECE:  Yes, Your Honor.

. . . .

> THE COURT:  Mr. Bullock, do you agree with all those things?

> THE DEFENDANT:  Yes, Your Honor.

. . . .

THE COURT:  Sir, you and I haven't talked. You have a right to go to a trial and I know you've been thinking about that and I don't want you to think that I'm going to hold it against you if you go to trial, but what I want you to understand is what you're facing if you go to trial. So, you know, I don't want you to think that you're being intimated or forced to enter a plea, but there are consequences to going to trial and the consequences would be they're going to add more charges, probably with the new case, and ask for a lot more time; you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So, right now, as you sit, do you want to go to trial?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay. Ms. Reece, you've had an opportunity to speak to your client about his ability to go trial?

MS. REECE:  Yes, Your Honor.

THE COURT:  And do you believe he's being forced or threatened in any way to enter this plea?

MS. REECE:  Not at all, Your Honor.

THE COURT:  I'm going to find that your plea of no contest in this Case 13-CF-1028 has been freely and voluntarily entered into, I'm going to accept it.

(Ex. A at 71–73).

On September 23, 2013, the court adjudicated Petitioner guilty, and sentenced him in accordance with the written plea agreement (Ex. A at 93–99; Ex. H at 28–35).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D13-4707 (Ex. A at 130; Ex. B). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that the appeal was frivolous (Ex. B). The First DCA provided Petitioner an opportunity to file a pro se initial brief (Ex. D). Petitioner filed a pro se brief, arguing that the trial court erred by failing to hold a hearing on Petitioner's motion to discharge defense counsel and represent himself (Ex. E). The First DCA affirmed the judgment per curiam without written opinion on July 3, 2014, with the mandate issuing July 29, 2014 (Exs. F, G). Bullock v. State, 145 So. 3d 832 (Fla. 1st DCA 2014) (Table).

On December 10, 2014, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. H at 1–8). In an order rendered January 29, 2015, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty (60) days (id. at 10–12). Petitioner filed an amended motion on April 15, 2015 (id. at 16–20). In an order rendered July 1, 2015, the state circuit court summarily denied the amended Rule 3.850 motion (id. at 24–26). Petitioner appealed the decision to the First DCA, Case No. 1D15-3997 (Ex. H at 50, Ex. I). The First DCA affirmed the lower court's decision per curiam without written opinion on November 5, 2015, with

the mandate issuing December 30, 2015 (Exs. I, L).  <u>Bullock v. State</u>, 179 So. 3d 321 (Fla. 1st DCA 2015) (Table).

Petitioner filed the instant federal habeas action on June 7, 2016 (ECF No. 1). In his amended § 2254 petition, Petitioner challenges his plea on grounds of ineffective assistance of trial counsel ("IATC"), specifically, that defense counsel failed to correct the trial court's misstatement that Petitioner could receive "40 years 'day for day'" if he proceeded to trial and was found guilty, and defense counsel failed to advise Petitioner he could <u>not</u> receive that sentence if he went to trial and lost (*see* ECF No. 4 at 3–5). Petitioner states that although the court could sentence him to 40 years (30 years on Count 1 as an HFO, and 10 years on Count 2 as an HFO) if he lost at trial, the court could impose a minimum mandatory of only 15 years, pursuant to the PRR statute, not "40 years 'day for day'" (*id.*). Petitioner alleges if counsel had advised him that he faced a minimum sentence of only 15 years and 1 day if he went to trial, he would have rejected the plea and proceeded to trial (*id.*).

Petitioner concedes, in both his amended petition and his reply, that he did not raise his claims in state court (*see* ECF No. 4 at 4–5; ECF No. 12). Petitioner states he did not do so, because he proceeded pro se in the state post-conviction proceeding and thus "was not made aware of the error" (ECF No. 4 at 4–5). Petitioner relies upon *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) to argue he

is entitled to a federal merits review of his claims (ECF No. 12 at 2–7). He also contends he is entitled to federal habeas relief based upon the merits of his claims (*id.* at 8–11).

Respondent contends Petitioner's IATC claims are unexhausted and now procedurally barred (ECF No. 11 at 14–15). Respondent argues Petitioner can not establish that his pro se status in the state court impeded or obstructed him in complying with Florida's established procedures for post-conviction relief, because Petitioner was aware of his IATC claims within the 2-year period for filing a timely Rule 3.850 motion, as evidenced by the fact that Petitioner asserted the claims in his § 2254 petition on June 7, 2016, yet Petitioner failed to present his claims by the two-year deadline (*id.* at 17–18). Respondent additionally argues that, notwithstanding Petitioner's procedural default, he is not entitled to federal habeas relief, because he failed to show that, absent defense counsel's alleged errors, an objectively reasonable person in his situation would not have pled guilty and would have insisted on going to trial (*id.* at 18–22).

## II.   DISCUSSION

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277–78.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *See Bailey v. Nagle*, 172 F.3d 1299,

---

[2]Section 2254 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

1302-03 (11th Cir. 1999). To overcome a procedural default, thus enabling the federal habeas court to reach the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).

Before its 2012 decision in *Martinez*, the Supreme Court had long held that § 2254 petitioners could not rely on errors made by their state collateral counsel to establish cause to overcome a procedural default. *See Coleman*, 501 U.S. 722, 752–53, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). *Martinez* created a limited, equitable exception to *Coleman* where, (1) a State requires a prisoner to raise an IATC claim in a collateral proceeding, as opposed to on direct appeal; (2) the state courts did not appoint counsel in the initial-review collateral proceeding, or appointed counsel in the initial-review collateral proceeding was ineffective under the standards of *Strickland*; and (3) the underlying IATC claim is a substantial one. *See Martinez*, 566 U.S. at 14 (citations omitted).

In *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014), the Eleventh Circuit explained *Martinez*'s "substantial claim" requirement:

*Martinez* articulated the "substantial claim" requirement as follows:

> To overcome the default, a prisoner must . . . demonstrate
> that the underlying ineffective-assistance-of-trial-counsel
> claim is a substantial one, which is to say that the prisoner
> must demonstrate that the claim has some merit. *Cf.*
> *Miller–El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154
> L. Ed. 2d 931 (2003) (describing standards for certificates
> of appealability to issue).

*Martinez*, 566 U.S. at 14, 132 S. Ct. at 1318–19. Neither *Martinez* nor *Trevino* [*v. Thaler*, 569 U.S. 413, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013)] elaborated on or applied this standard, but we take the Court's reference to *Miller–El* to mean that it intended that lower courts apply the already-developed standard for issuing a COA, which requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

As the Court explained in *Miller–El*, "[a] petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327, 123 S. Ct. at 1034.Where a petitioner must make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000). That does not mean that a petitioner must show "that some jurists would grant the petition." *Miller–El*, 537 U.S. at 338, 123 S. Ct. at 1040. "[A] claim can be debatable even though every jurist of reason might agree, after the . . . case has received full consideration, that petitioner will not prevail." *Id.*

We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings. Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that

point to a real possibility of constitutional error." Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

Thus, we examine the allegations in . . . the § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*.

*Hittson*, 759 F.3d at 1269–70 (footnotes omitted).

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *See Lafler v. Cooper*, 566 U.S. 156, 162–63, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) (citing *Missouri v. Frye*, 566 U.S. 133, 145, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 132 S. Ct. at 1387. The two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during the plea process. *See Lafler*, 132 S. Ct. at 1384 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 132 S. Ct. at 1404, 1409–10 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474

U.S. 52, 58, 16 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

The focus of inquiry under the performance prong of the *Strickland* standard is whether counsel's assistance was "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 691.The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann*, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56–57 (quoting *McMann*, 397 U.S. at 771). Under this standard, representation is ineffective

only if counsel commits "serious derelictions" of her duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.*

As previously discussed, in the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

In a post-conviction challenge to a guilty plea:

> [T]he representations of the defendant, his lawyer, and the prosecutor at
> [the plea] hearing, as well as any findings made by the judge accepting
> the plea, constitute a formidable barrier in any subsequent collateral
> proceedings. Solemn declarations in open court carry a strong
> presumption of verity. The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal, as
> are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 52 L.Ed.2d 136 (1977)

(citations omitted); *see also United States v. Gonzalez–Mercado*, 808 F.2d 796,

799–800 and n.8 (11th Cir. 1987) (while not insurmountable, there is a strong

presumption that statements made during a plea colloquy are true, citing *Blackledge*

and other cases).

Here, it is evident from the transcript of the pre-trial hearing that the trial

court's misstatement, that Petitioner could be sentenced to 40 years "day for day" if

he lost at trial, was made prior to Petitioner's signing the written plea agreement. The

written plea agreement plainly stated that the only mandatory sentence Petitioner

faced was a 15-year mandatory on Count 1. After Petitioner signed the plea

agreement, he stated on the record that he read and understood it. Petitioner does not

allege, nor does the record suggest, that he expressed to either defense counsel or the

trial court any confusion as to the length of any mandatory sentences he faced if he

went to trial and lost.

Based upon the record, the undersigned concludes that jurists of reason would not find it debatable whether Petitioner has stated a valid claim of the denial of a constitutional right with respect to defense counsel's performance during the plea process. Petitioner failed to show that his plea was the product of counsel's failure to advise him that the court could not impose a 40-year mandatory sentence if Petitioner proceeded to trial and lost. As previously noted, the written plea agreement plainly stated that only a 15-year mandatory applied. Based upon Petitioner's acknowledgments in the written plea agreement and during the plea colloquy, Petitioner's after-the-fact assertion that he would have proceeded to trial but for the trial court's "40 years day for day" comment, is insufficient to show a reasonable probability he would have rejected the 15-year plea offer and risked conviction of the charges related to both robberies. This is particularly true given the DNA evidence linking him to both robberies, and the fact that the Petitioner also faced sentences totaling 40 years, with a 30-year mandatory term (by virtue of the possibility of receiving maximum, fully enhanced, consecutive sentences for the offenses related to both robberies).

Petitioner has failed to satisfy the "substantial claim" prong of the *Martinez* exception to the procedural bar, and thus is not entitled to a merits review of his habeas claims.  And even if Petitioner satisfied the *Martinez* standard, he certainly has

not satisfied the higher standard, upon de novo review of his IATC claims under *Strickland*, of demonstrating his entitlement to federal habeas relief.  Therefore, the amended habeas petition should be denied.

## III.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, — U.S. —, 137 S. Ct. 759, 773, 197 L. Ed. 2d 1 (2017) (citing *Miller-El*, 537 U.S. at 327).  Here, Petitioner

cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      The amended petition for writ of habeas corpus (ECF No. 4) be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>11th</u> day of December 2018.

<u>/s/ Michael J. Frank</u>
**Michael J. Frank**
**United States Magistrate Judge**

### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district**

court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.